**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

DEBORA D.,[1]                                )
                                             )
    *Plaintiff,*                             )
                                             )
        v.                                   )        Civil No. 3:24-cv-766 (SLS)
                                             )
FRANK BISIGNANO,[2]                          )
Commissioner of Social Security,             )
                                             )
    *Defendant.*                             )

**<u>MEMORANDUM OPINION</u>**

In this action, Plaintiff Debora D., who proceeds *pro se*, seeks review of the Commissioner

of the Social Security Administration's ("SSA's") decision to deny her Title II application for

disability insurance benefits.  This matter comes before the Court on cross-motions for summary

judgment[3] which have been fully briefed, making this matter ripe for review.  (ECF Nos. 10, 12,

15.)  The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C.

§ 636(c)(1) (ECF Nos. 9, 11, 13) and pursuant to 42 U.S.C. § 405(g).

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2]  Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Acting Commissioner as Defendant in this action. 42 U.S.C. § 405(g).  No further action need be taken.

[3] Given the liberal pleading standards afforded to *pro se* parties, the Court construes the "brief in support" filed by Plaintiff (ECF No. 10) as a Motion for Summary Judgment.  She submitted that filing following the Scheduling Order in a Social Security Appeal (ECF No. 7), which set deadlines for cross-motions for summary judgment. The Court construes the second "brief in support" (ECF No. 15), which Plaintiff filed after the Commissioner's Motion for Summary Judgment (ECF No. 12) and the Court's issuance of *Roseboro* Notice to Plaintiff (ECF No. 14), as a reply brief.

Plaintiff challenges the Commissioner's decision denying her social security benefits and asks the Court to "reweigh" the decision.  (ECF No. 10, at 1; ECF No. 15, at 1.)[4]  Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by: (1) improperly weighing medical opinion evidence, including finding "favorable" medical opinions unpersuasive and "unfavorable" opinions persuasive; and (2) finding Plaintiff capable of performing her past relevant work ("PRW") at step four.  (*See* ECF No. 10, at 1; ECF No. 15, at 1.)  Plaintiff also asks the Court to consider new medical records supporting her claim of disability, all of which postdate the ALJ's decision.  (ECF No. 15, at 1; *see* ECF Nos. 15-1, 15-2, 15-3.)

In response, the Commissioner contends that: (1) "the ALJ carefully explained the relevant factors of consistency and supportability in assessing the multitude of opinions in the record, and substantial evidence supports his findings;" and (2) "two separate vocational experts confirmed via testimony and interrogatories that an individual with Plaintiff's age, education, prior experience, and residual functional capacity could perform Plaintiff's past relevant work as a legislative aide as generally performed" and the ALJ did not err in relying on such vocational expert ("VE") testimony as substantial evidence to support his step four findings.  (ECF No. 12, at 2.)  The Commissioner moves the Court to affirm the final decision denying benefits.  (ECF No. 12, at 2, 27.)

For the reasons set forth below, the Court finds that the ALJ complied with applicable legal standards in considering the medical opinion evidence and conducting the step four analysis and that substantial evidence supports the ALJ's findings.  Additionally, in this social security appeal, the Court declines to consider new medical evidence not previously presented to the SSA and that post-dates the decision under review.  Therefore, the Court will DENY Plaintiff's Motion for

---

[4] For Plaintiff's filings, the Court cites to the pages as numbered by CM/ECF.

Summary Judgment and Brief in Support (ECF No. 10), GRANT the Commissioner's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 12), and AFFIRM the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY

On June 25, 2021, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on October 24, 2019.  (Administrative Record ("R.") at 115.)[5]  In her application, Plaintiff alleged that she suffered from complications due to a lower back surgery, neck surgery, and a right shoulder rotator cuff tear.[6]  (R. at 116, 123.)  The Commissioner denied Plaintiff's claim initially and on reconsideration.  (R. at 115, 131, 142-45, 147-50.)

Plaintiff requested a hearing before an ALJ, and one was held on March 14, 2023.  (R. at 61-89, 151.)  At the March 14, 2023 hearing, Plaintiff was represented by counsel, and VE Vanessa Ennis testified.  (R. at 61-89.)  Because complications with the recording equipment rendered VE Ennis's testimony inaudible, the ALJ sent VE Ennis interrogatories.  (R. at 92-93, 314-18.)  VE Ennis responded but excluded an answer to a question about transferable skills.  (R. at 92, 320-23.)  The ALJ sent supplemental interrogatories to VE Ennis but did not receive a response.  (R. at 92.)  Accordingly, on September 28, 2023, the ALJ held a telephonic hearing to resolve outstanding vocational questions.  (R. at 90-97.)  Plaintiff was again represented by counsel, and VE Nadine Henzes testified.  (R. at 90-97.)

---

[5] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C).  In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion.  The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

[6] On July 7, 2016, an ALJ issued an unfavorable decision denying a prior application for disability insurance benefits filed by Plaintiff.  (R. at 101-08.)  The Appeals Council denied review of that decision on March 6, 2017, and Plaintiff did not further appeal.  (R. at 132-34.)

On October 30, 2023, the ALJ issued a written decision, finding Plaintiff not disabled within the meaning of the Social Security Act ("the Act") from October 24, 2019 (the alleged onset date) to December 31, 2022 (her date last insured).  (R. at 18-29.)  On October 9, 2024, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. at 1-3.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.* § 404.1520(a)(4)(ii).  At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations.  *Id.* § 404.1520(a)(4)(iii).  Between steps three and four, the ALJ determines the

claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(f). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

5

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

Pleadings filed by *pro se* litigants should be afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Court, however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id*. As the Fourth Circuit articulated in *Beaudett v. City of Hampton*, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." 775 F.2d 1274, 1278 (4th Cir. 1985). "Though [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id*. at 1276.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process. (R. at 19-29); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634-35. The ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2022. (R. at 21.)

6

Then, at step one, the ALJ determined that Plaintiff had "not engage[d] in substantial gainful activity during the period from her alleged onset date of October 24, 2019 through her date last insured of December 31, 2022." (R. at 21.)  At step two, the ALJ found Plaintiff suffered from the severe impairments of cervical degenerative disc disease, status post cervical diskectomy and fusion and right shoulder impingement syndrome, status post arthroscopy and right shoulder rotator cuff repair.  (R. at 21.)  At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 22.)

The ALJ then determined Plaintiff's RFC.  (R. at 23-27.)  Based on the record, the ALJ found that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b), "except she can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; occasionally reach overhead bilaterally; and frequently handle, finger, and reach in front with [her] dominant, right upper extremity."  (R. at 23.)

In arriving at the RFC, the ALJ first considered Plaintiff's subjective allegations.  (R. at 23.)  Plaintiff reported "right shoulder and neck difficulties with trouble lifting, standing, and sitting."  (R. at 23.)  Plaintiff also testified to ongoing right shoulder and cervical pain and stated that she could not lift more than ten pounds with her left arm, sit for more than about thirty minutes, and stand for more than twenty minutes.  (R. at 23.)

The ALJ then considered Plaintiff's subjective complaints alongside the medical records.  (R. at 23-25.)  Plaintiff had a medical history of cervical degenerative disc disease, with 2017 medical imaging revealing mild disc osteophytes.  (R. at 23-24.)  In 2019, an MRI of Plaintiff's right shoulder revealed a rotator cuff tendinopathy, showing a probable partial tear.  (R. at 24.)  Plaintiff underwent right shoulder physical therapy in June and July 2019, with reports indicating

decreased strength and range of motion in the right upper extremity. (R. at 24.) Records also noted that Plaintiff engaged in activities such as cleaning, working in the yard, and swimming at the lake. (R. at 24.) Notes from late 2019 indicated that treatment improved strength and range of motion, but Plaintiff had lingering pain and positive impingement signs. (R. at 24.) In December 2019, Plaintiff "underwent a right shoulder arthroscopy with subacromial decompression and bursa excision." (R. at 24.)

In 2020, medical examinations showed a good range of motion in the right shoulder and cervical spine, but some pain issues in the right upper extremity. (R. at 24.) Examinations later that year revealed a decreased range of motion and weakened strength in the right shoulder and rotator cuff. (R. at 24.) Additional testing and an MRI showed "tearing of the supraspinatus tendon and a partial thicken bursal tear," leading to a rotator cuff repair surgery in November 2020. (R. at 24.)

In 2021, Plaintiff initially reported doing well post-surgery but subsequently reported lingering pain. (R. at 24.) Medical examinations revealed a "limited cervical range of motion with spasms, a slightly decreased range of motion to the right upper extremity, tenderness to the right shoulder, and impingement signs." (R. at 24.) In mid-2021, Plaintiff exhibited equal shoulder strength bilaterally but still reported discomfort raising her right shoulder above shoulder level. (R. at 24.) Examinations continued to show normal upper extremity strength but some limited range of motion with impingement signs. (R. at 24.) Medical imaging confirmed no new tears, and an MRI revealed "mild to moderate stenosis of the cervical spine." (R. at 24.) To treat her stenosis, Plaintiff underwent epidural injections with fifty percent pain relief reported. (R. at 24.) Additional examinations showed full 5/5 strength in the upper extremities, a normal gait, limited range of motion in right upper extremity, and cervical paravertebral spasms. (R. at 24.)

In early 2022, examinations showed an "irritable range of motion" in Plaintiff's cervical spine and a decreased range of motion in the right upper extremity. (R. at 24.) In mid-2022, Plaintiff underwent a cervical diskectomy and fusion. (R. at 24.) Post-operation examinations continued to show decreased range of motion in the same issue areas but "symmetric upper extremity strength," with a provider noting that it could take up to twelve months for the fusion to reach full strength. (R. at 24.) In 2023, Plaintiff continued reporting neck and shoulder pain with examinations showing normal motor findings, but decreased range of motion with impingement signs. (R. at 24.)

The ALJ concluded that the record did not support Plaintiff's alleged "intensity, persistence, and limiting effect of her symptoms." (R. at 24.) Specifically, the ALJ explained that "[d]espite two surgeries on her right shoulder and the cervical fusion surgery, most examinations revealed a decreased range of motion to the right shoulder and cervical spine" but "full strength." (R. at 24-25.) Plaintiff also testified that she could drive on a monthly basis. (R. at 25.) Even so, considering her testimony regarding ongoing pain and exertional difficulties, the ALJ limited Plaintiff to light work with postural limitations, occasional overhead reaching, and frequent handling, fingering, and reaching in front with her dominant, right upper extremity. (R. at 25.)

The ALJ also considered the medical opinions and prior administrative medical findings. (R. at 25-27.) Non-examining state agency medical consultant Robert McGuffin, M.D., opined that Plaintiff could "perform light work, except she could occasionally climb ramps and stairs but never climb ladders, ropes, and scaffolds; occasionally balance and stoop; frequently kneel, crouch, and crawl; and could frequently reach … with the right upper extremity." (R. at 25.) Non-examining state agency medical consultant William Rutherford, M.D., also found Plaintiff could "perform light work, except she could frequently climb ramps and stairs and occasionally climb

9

ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, and crawl; and could frequently reach overhead with the right upper extremity." (R. at 25.) The ALJ found these "opinions of light work, reduced postural, and reduced reaching with the right upper extremity" persuasive as they were supported by the medical record, including two surgeries on Plaintiff's right shoulder and the cervical fusion surgery, and consistent with the examination findings of "decreased range of motion to the right shoulder and cervical spine but [] full strength to the extremities." (R. at 25.) Multiple providers similarly found Plaintiff capable of "light duty," with lifting up to twenty pounds. (R. at 25.) The ALJ found those opinions persuasive for similar reasons, including their support in the record and consistency with the state consultants' opinions. (R. at 25.) The ALJ assigned greater limitations to account for the complete record and Plaintiff's testimony. (R. at 25-26.)

The ALJ also considered the following opinions:

- Treating providers William Fluker, PA, and William Andrews, M.D., found Plaintiff could perform "light duty with no lifting of the right upper extremity." (R. at 26.)

- Examining provider Vipool Goradia, M.D., found Plaintiff capable of "light duty" but limited Plaintiff to lifting no more than ten pounds to waist level, no overhead lifting, and no reaching. (R. at 26.)

- A provider in 2023 opined that Plaintiff could "occasionally lift 10 pounds but never lift overhead." (R. at 26.)

- Examining provider Ellen Hudgins, OTD, found Plaintiff could "occasionally sit, stand, bend, and reach but was unable to reach overhead with the right upper extremity; occasionally climb, kneel, walk, balance, and make repetitive extremity movement; never crawl; and occasionally lift 10 pounds and frequently lift negligible weight." (R. at 26.)

The ALJ found the light duty opinions persuasive, again finding them supported by Plaintiff's surgical history and consistent with the other medical opinions finding light work appropriate. (R. at 25.) However, the ALJ found the lifting restrictions and no overhead reaching restrictions unpersuasive. (R. at 26-27.) The ALJ explained that such restrictions were not supported by the

10

repeated findings of "full strength" in the right upper extremity and inconsistent with Plaintiff's "reports of doing well with injections." (R. at 26.)

Next, the ALJ discussed a 2023 opinion submitted by Dr. Andrews, who opined that Plaintiff could:

> sit, stand, and walk less than two hours a day; requires 10 minutes of walking around every 20 minutes; would need the ability to shift positions at will; requires a 30 minute break every 20 minutes; can never lift and carry more than 10 pounds; can never twist, stoop, crouch, or climb; can never or rarely move her neck; can grasp, twist, perform fine manipulation, and reach 10% of the workday with the bilateral upper extremities; would be absent more than four days a month; and would be off task more than 15% of the day.

(R. at 27.) The ALJ concluded that Andrews provided no support for this opinion—"no narrative explanation for the severity of the limitations" and no explanation for the need for absences, off-task time, breaks, or the ten percent manipulation limit. (R. at 27.) The ALJ also found Dr. Andrews's opinion inconsistent with the medical findings of full strength in Plaintiff's upper extremities, reports that Plaintiff responded well to injections, and state consultant opinions that no more than frequent manipulation limitations were needed. (R. at 27.) Therefore, the ALJ found Dr. Andrews's 2023 opinion unpersuasive. (R. at 27.)

The ALJ also considered the previous ALJ decision, concluding that Plaintiff had the RFC to perform light work. (R. at 27.) The ALJ gave that prior finding "great weight," but found additional restrictions warranted given the "passage of time and the receipt of additional medical evidence." (R. at 27.)

At step four, after considering VE testimony from the September 2023 hearing, the ALJ found that Plaintiff could perform her PRW as a Legislative Aide as generally performed at the sedentary level. (R. at 27-28.) The previous ALJ decision also concluded that Plaintiff could return to her past work as a Legislative Aide, and the ALJ gave that finding "great weight." (R. at

11

28.)  Therefore, the ALJ found Plaintiff not disabled from October 24, 2019 (the alleged onset date) through December 31, 2022 (the date last insured).  (R. at 28-29.)

## IV.    ANALYSIS

In construing Plaintiff's *pro se* pleadings liberally, Plaintiff raises three assignments of error in challenging the ALJ's decision.  The Court addresses each argument below and finds no reversible error.

### A. The ALJ's Consideration of Medical Opinion Evidence Comports with Applicable Legal Standards and Finds Substantial Support in the Evidence

In challenging the ALJ's decision, Plaintiff argues that the ALJ wrongly found all the opinions "favorable" to Plaintiff "not persuasive," while finding all opinions "unfavorable" to Plaintiff "persuasive."  (ECF No. 10, at 1; ECF No. 15, at 1.)  Review of the ALJ's decision shows that he found opinions limiting Plaintiff to sedentary work, no lifting, no reaching, or less than frequent manipulation unpersuasive, while finding opinions limiting Plaintiff to a range of light work with postural restrictions persuasive.  (R. at 25-27.)  In making these findings, the ALJ considered the two most important factors of supportability and consistency and adequately explained why he found certain opinions persuasive while finding others not persuasive.  (*See* R. at 25-27.)  The ALJ applied correct legal standards in considering the prior administrative medical findings and medical opinion evidence and cited substantial evidence supporting his conclusions. Therefore, the Court finds no error.

Under applicable regulations,[7] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source.    20 C.F.R.

---

[7] Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework.  20 C.F.R. § 404.1520c; (*see also* ECF No. 12, at 20.)

§ 404.1520c(a).  Specifically, the ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including "familiarity with the other evidence" or "understanding of [the SSA] disability program's policies and evidentiary requirements."  *Id.* § 404.1520c.

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered.  *Id.* § 404.1520c(b)(2).  The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  *Id.* § 404.1520c(b)(2).

Here, the ALJ discussed the two relevant factors of consistency and supportability of the medical opinions and properly explained why he found certain opinions persuasive and other opinions not persuasive.  (*See* R. at 25-27.)  He found Dr. McGuffin and Dr. Rutherford's prior administrative medical findings persuasive, explaining that the doctors supported their findings of light work with reduced postural activities and right upper extremity reaching by referencing the cervical and right shoulder surgeries.  (R. at 25 (citing Ex. B3A [R. at 116-22]; Ex. B4A [R. at 123-30]; B20F/11 [R. at 1851]; Ex. B22F/18, 20 [R. at 1872, 1874]; Ex. B29F/14 [R. at 2354]).)  The ALJ found their opinions consistent with the record, including the examination findings of "a

13

decreased range of motion to the right shoulder and cervical spine but a full strength to the extremities." (R. at 25 (citing Ex. B2F/4, 25, 44, 68 [R. at 361, 382, 401, 425]; Ex. B3F/283, 300 [R. at 718, 735]; Ex. B8F/8, 10 [R. at 1126, 1128]; Ex. B9F/3, 39, 45, 51, 58 [R. at 1188, 1224, 1230, 1236, 1243]; Ex. B13F/11 [R. at 1451]; Ex. B14F/9 [R. at 1461]; Ex. B16F/3 [R. at 1768]; Ex. B17F/1 [R. at 1781]; Ex. B18F/2 [R. at 1788]; Ex. B20F/1, 11 [R. at 1841, 1851]; Ex. B22F/11, 17, 20, 24 [R. at 1865, 1871, 1874, 1878]; Ex. B29F/14 [R. at 2354]).)  The ALJ then assigned greater RFC limitations to account for Plaintiff's testimony and the additional medical records submitted at the hearing level.  (R. at 25, 27.)  The ALJ provided a similar assessment of the providers who also found Plaintiff capable of light duty.  (R. at 25 (citing Ex. B3F/102-04, 118, 274 [R. at 537-39, 553, 709]; Ex. B15F [R. at 1500, 1503, 1518, 1549, 1554]).)

The ALJ then considered the opinions of PA Fluker and Dr. Andrews, who both found Plaintiff capable of light duty work with no lifting of the right upper extremity.  (R. at 26 (citing Ex. B3F/274, 298 [R. at 709, 733]; Ex. B9F/50 [R. at 1235]; Ex. B15F [R. at 1509, 1534, 1562, 1564, 1566]).)  The ALJ found the light duty restriction supported by and consistent with Plaintiff's surgical history (R. at 26 (citing Ex. B20F/11 [R. at 1851]; Ex. B22F/18, 20 [R. at 1872, 1874]; Ex. B29F/14 [R. at 2354])), but found the no lifting restriction inconsistent with the medical record containing repeated findings of full strength in the right upper extremity and Plaintiff's reports that injections helped with pain management (R. at 26 (citing Ex. B2F/4, 25, 44, 68 [R. at 361, 382, 401, 425]; Ex. B3F/283, 300 [R. at 718, 735]; Ex. B8F/7, 8, 10 [R. at 1125, 1126, 1128]; Ex. B9F/3, 15, 39, 45, 51, 58 [R. at 1188, 1200, 1224, 1230, 1236, 1243]; Ex. B13F/11 [R. at 1451]; Ex. B14F/9 [R. at 1461]; Ex. B16F/3 [R. at 1768]; Ex. B17F/1 [R. at 1781]; Ex. B18F/2 [R. at 1788]; Ex. B20F/1, 11 [R. at 1841, 1851]; Ex. B22F/11, 17, 20, 24 [R. at 1865, 1871, 1874, 1878];

14

Ex. B 27F/19 [R. at 2333]; Ex. B29F/14 [R. at 2354])).[8]  Therefore, the ALJ found the light duty

portion of these opinions persuasive, but the lifting restriction portion not persuasive.  (R. at 26.)

The ALJ made similar findings regarding Dr. Goradia's opinion, a 2023 opinion, and Dr.

Hudgins's opinion.  (R. at 26-27.)  Dr. Goradia opined that Plaintiff could return to "light duty"

but could not lift more than ten pounds to waist level and could not reach or lift overhead.  (R. at

26.)  The 2023 opinion found that Plaintiff could "occasionally lift 10 pounds but never lift

overhead."  (R. at 26.)  Dr. Hudgins concluded that Plaintiff could "occasionally sit, stand, bend,

and reach but was unable to reach overhead with the right upper extremity; occasionally climb,

kneel, walk, balance, and make repetitive extremity movement; never crawl; and occasionally lift

10 pounds; and frequently lift negligible weight."  (R. at 26.)  The ALJ found light duty limitations

persuasive but the extent of the sedentary, lifting, reaching, and manipulative restrictions

unpersuasive, again citing the surgical history, full strength on examination, reports of doing well

with injections, and prior administrative medical findings.  (*See* R. at 26-27.)

The ALJ next found Dr. Andrews's 2023 opinion unpersuasive.  (R. at 27.)  Dr. Andrews

opined that Plaintiff could sit, stand, and walk for less than two hours; required the ability to shift

positions at will; walk around for ten minutes every twenty minutes and break for thirty minutes

every twenty minutes; never lift or carry more than ten pounds; never twist, stoop, crouch, or

climb; rarely or never move her neck; perform fine manipulation, grasp, twist, and reach ten

---

[8] Plaintiff challenges the ALJ's reliance on reports that she was "[d]oing well with injections." (ECF No. 10, at 1.)  She argues that "[i]njections are for pain management[;] they do nothing to improve range of motion, ability or function." (ECF No. 10, at 1.)  The ALJ does not suggest otherwise.  The decision acknowledged that Plaintiff received injections following her continued reports of right upper extremity and neck pain and that she "reported up to 50% relief" with injections. (R. at 24.)  This tracks Plaintiff's hearing testimony, where she stated that shoulder and neck injections made the pain a "a little bit more tolerable" and helped "to manage the pain." (R. at 73-74.)  The ALJ did not err in considering treatment which provided partial pain relief to Plaintiff.

percent of the workday; and would be absent more than four days a month; and be off task more than fifteen percent of the day.  (R. at 27 (citing Ex. B19F/2-4, 6 [R. at 1836-38, 1840]).)[9]  The ALJ found this opinion unsupported.  (R. at 27.)  Indeed, the opinion provides no narrative explanation supporting the severity of the limitations and no explanation for how Dr. Andrews arrived at the restrictions.  (R. at 27; *see* R. at 1835-40.)  The ALJ also found Dr. Andrews's opinion inconsistent with the medical findings of full strength to the upper extremities, reports of improvement with injections, and state consultant opinions allowing frequent manipulation.  (R. at 27 (citing Ex. B3A [R. at 116-22]; Ex. B4A [R. at 123-30]; Ex. B2F/4, 25, 44, 68 [R. at 361, 382, 401, 425]; Ex. B3F/283, 300 [R. at 718, 735]; Ex. B8F/7, 8, 10 [R. at 1125, 1126, 1128]; Ex. B9F/3, 15, 39, 45, 51, 58 [R. at 1188, 1200, 1224, 1230, 1236, 1243]; Ex. B13F/11 [R. at 1451]; Ex. B14F/9 [R. at 1461]; Ex. B16F/3 [R. at 1768]; Ex. B17F/1 [R. at 1781]; Ex. B18F/2 [R. at 1788]; Ex. B20F/1, 11 [R. at 1841, 1851]; Ex. B22F/11, 17, 20, 24 [R. at 1865, 1871, 1874, 1878]; Ex. B 27F/19 [R. at 2333]; Ex. B29F/14 [R. at 2354]).)[10]

As Plaintiff points out, the ALJ did find certain opinions persuasive and others unpersuasive.  (*See* R. at 25-27.)  But in doing so, the ALJ referenced and relied on record citations and adequately explained the evidence supporting his conclusions.  (*See* R. at 25-27.)  Because the

---

[9] Plaintiff attaches a February 21, 2023 letter authored by Dr. Andrews to her Motion for Summary Judgment.  (ECF No. 10-1.)  The ALJ considered (and cited to) this letter in connection with his assessment of Dr. Andrews's 2023 opinion.  (R. at 27 (citing Ex. B19F/6 [R. at 1840]).)

[10] To the extent Plaintiff contends that Dr. Andrews's opinion should have carried more weight because of his status as "primary treating physician and surgeon from May of 2019 to March of 2024" (ECF No. 10, at 1), such an argument fails under the revised regulations.  For claims filed on or after March 27, 2017, including Plaintiff's, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from [Plaintiff's] medical sources."  20 C.F.R. § 404.1520c(a).  Thus, Dr. Andrews's status as a treating provider is one of many factors the ALJ may consider.  But the ALJ properly considered consistency and supportability, the two "most important factors," in determining the persuasiveness of Dr. Andrews's opinion.  *See id*. § 404.1520c(b)(2).

16

ALJ's decision permits meaningful judicial review and builds a logical bridge between the evidence and the ALJ's conclusions, the Court finds no error. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).[11]

### B. Substantial Evidence Supports the ALJ's Step Four Finding that Plaintiff Could Perform Her Past Relevant Work as a Legislative Aide as Generally Performed

Plaintiff next challenges the ALJ's step four conclusion that she could perform her PRW as a Legislative Aide as generally performed. (*See* ECF No. 10, at 1; ECF No. 15, at 1.) Plaintiff argues that her role as a Legislative Aide "entail[ed] lifting heavy storage file boxes on a regular basis" and "long periods" of sitting, standing, reaching, pulling, and carrying, which she contends she cannot do. (ECF No. 15, at 1.) She attaches VE Ennis's Vocational Interrogatory, which she contends was omitted from the record, and cites the answer to question eight as proof that she cannot perform her PRW. (ECF No. 10, at 1-5.) Plaintiff's argument fails for several reasons.

First, VE Ennis's responses to the interrogatories were not omitted from the record. Instead, they appear within the administrative record. (*See* R. at 320-23.)

Second, although VE Ennis checked the box for "No" suggesting that Plaintiff could not perform her PRW, the substance of VE Ennis's written response indicates otherwise. (*See* R. at 321.) Specifically, VE Ennis answered that "[t]he Legislative Aide position, according to the D.O.T. is performed @ sedentary, although according to the claimant she performed @ medium." (R. at 321.) This answer suggests that Plaintiff, with a reduced light work RFC, could perform the

---

[11] To the extent Plaintiff takes a different view of the opinion evidence, the Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ. *See Hancock*, 667 F.3d at 472. Here, the ALJ considered the medical opinion evidence consistent with applicable law but did not draw the inferences or conclusions Plaintiff wanted. Plaintiff has failed to explain or otherwise show that the ALJ committed legal error and instead invites the Court to reweigh the evidence in her favor, which the Court is not permitted to do.

job as generally performed at the sedentary level, even if she could not perform the job as she actually performed it.

Third, the ALJ received additional testimony from VE Henzes, who confirmed at the supplemental hearing that Plaintiff would be able to perform her PRW as a Legislative Aide as generally performed. (*See* R. at 94-95); *see also* Dictionary of Occupational Titles ("DOT"), No. 199.267-034, 1991 WL 671654 (Legislative Aide). This VE testimony, which was based on the DOT and the VE's experience and training, constitutes substantial evidence supporting the ALJ's step four finding. The ALJ did not err in relying on this evidence. *See Pearson v. Colvin*, 810 F.3d 204, 207-08 (4th Cir. 2015).

Fourth, although Plaintiff argues that her prior role as a Legislative Aide involved lifting heavy boxes (ECF No. 15, at 1), the occupation as generally performed does not involve this requirement and is categorized as sedentary work. (R. at 94-95); *see also* DOT, No. 199.267-034, 1991 WL 671654 (Legislative Aide). The regulations provide that if a claimant can return to his or her PRW as the claimant actually performed it *or* as it is generally performed, then he or she is not disabled. *See* 20 C.F.R. §§ 404.1520(f), 404.1560(b)(2)-(3). Under Social Security Ruling ("SSR") 82-61, a claimant retains the capacity to perform his or her past relevant job where he or she can perform either (1) "the particular functional demands and job duties peculiar to an individual job as … actually performed;" *or* (2) "the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." SSR 82-61, 1982 WL 31387 (1982); *see Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995) ("The two tests [in SSR 82-61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate." (quoting *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990) (alteration in original))). Here, under the second prong, the ALJ found Plaintiff able to perform

18

her PRW as a Legislative Aide as generally performed.  (R. at 27-28.)  The Court finds no reversible error in the ALJ's step four analysis.

### C. The Court Declines to Consider the New Medical Evidence Not Previously Presented to the Commissioner

Plaintiff also asks the Court to consider "ongoing medical records" and attaches office visit notes from August 16, 2024 and November 22, 2024, MRI results from June 20, 2024, EMG results from October 16, 2024, and surgery notes from January 30, 2025. (ECF Nos. 15, at 1, 15-1, 15-2, 15-3.)  The Court declines to consider these ongoing medical records in connection with this appeal.

"A district court reviewing an ALJ's decision cannot consider evidence outside the record in front of the ALJ." *Babcock v. Comm'r of Soc. Sec.*, No. 3:10-cv-431, 2011 WL 2899169, at *6 (E.D. Va. July 18, 2011) (citing *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996)).  However, the Court can remand a matter back to the Commissioner for consideration of new evidence provided that the new evidence "is material" and "there is good cause for the failure to incorporate such evidence into the record in [the] prior proceeding." 42 U.S.C. § 405(g). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Sec., Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

Here, Plaintiff has not shown that remand for consideration of new evidence would be appropriate. *See Keith v. Astrue*, No. 4:11-cv-37, 2012 WL 2425658, at *2 (W.D. Va. June 22, 2012) (stating that the claimant bears the burden of showing entitlement to a Sentence Six remand under 42 U.S.C. § 405(g)), *report and recommendation adopted*, 2012 WL 4458649 (W.D. Va. Aug. 9, 2012).  The evidence presented is not relevant to the time frame at issue in the denial decision.  The ALJ assessed Plaintiff's disability from the alleged onset date of October 24, 2019 through the date last insured of December 31, 2022.  (R. at 28-29.)  Evidence from 2024 and 2025,

19

between three to five years after the disability period at issue, is not material to the ALJ's decision on appeal and there is no reasonable possibility that such evidence would have changed the outcome. Accordingly, the Court declines to consider new evidence not yet considered by the SSA. To the extent Plaintiff believes the ongoing records demonstrate a worsening condition, Plaintiff may file a new application with the SSA.

## V.    CONCLUSION

For the reasons set for above, the Court will DENY Plaintiff's Motion for Summary Judgment and Brief in Support (ECF No. 10), GRANT the Commissioner's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 12), and AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

/s/ _____

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: March 30, 2026